UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ANDRES ALFONSO VICUNA URDANETA,

Petitioner,

v. Case No. 3:26-cv-2589-MMH-SJH

SCOTTY RHODEN, et al.,

Respondents.

---

# ORDER

## I. Status

Petitioner Andres Alfonso Vicuna Urdaneta initiated this action by filing through counsel a Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief[1] (Doc. 1; Petition) on September 25, 2026. Three days later, on September 28, 2026, Vicuna Urdaneta filed an Emergency Motion for Temporary Restraining Order (Doc. 3). The Federal Respondents filed a Response (Doc. 6; Response) with exhibits (Docs. 6-1 through 6-4) arguing that Vicuna Urdaneta's claim pursuant to Zadvydas v. Davis, 533 U.S. 678 (2001), is premature, and Vicuna Urdaneta improperly asserts claims

[1] The Court initially notes that it is inappropriate to bring a joint civil rights/habeas action. A petition for writ of habeas corpus and civil complaint have different filing fees, rules regarding service of process, and forms of relief. While the Court refrains from striking the Petition or dismissing individual claims in this case, counsel is warned that future joint civil rights/habeas filings may be stricken.

regarding his removal to a third country. Vicuna Urdaneta replied (Doc. 7). This case is ripe for review.

## II. Background

Vicuna Urdaneta, a citizen of Venezuela, was admitted to the United States as a B-2 nonimmigrant temporary visitor for pleasure on July 25, 1999, with an authorization not to exceed January 24, 2000. Doc. 6-1 at 2. However, Vicuna Urdaneta failed to depart the United States before January 24, 2000. Id. Following removal proceedings, on April 14, 2008, an immigration judge ordered Vicuna Urdaneta removed but granted withholding of removal to Venezuela. Doc. 6-2 at 1–2. Vicuna Urdaneta remained in the United States for approximately 18 years until United States Immigration and Customs Enforcement (ICE) detained him following a traffic stop on September 2, 2026. Doc. 6-1 at 2. According to Vicuna Urdaneta, that same day, an officer provided him with papers and "offered Mexico, Colombia, and 'Africa' as possible destinations" for removal. Petition at 16–17; see also Doc. 1-5 at 8 (declaration of Mariel C. Paez Urdaneta). Vicuna Urdaneta could not identify the legal effect of the papers, so he refused to sign them, and the officer stamped the papers accordingly. Petition at 17; see also Doc. 1-5 at 8. The officer then stated he would enter the information into the system and permitted Vicuna Urdaneta to use his telephone. Petition at 17; see also Doc. 1-5 at 8.

After Vicuna Urdaneta arrived at Baker County Detention Center, an officer again asked him whether he wanted to sign papers to go to Mexico. Petition at 17; see also Doc. 1-5 at 8. Vicuna Urdaneta responded that he wanted to remain in the United States, so the officer "moved to the next person." Petition at 17; see also Doc. 1-5 at 8. "In a later encounter an officer said, 'I have your offer here to go to Mexico, are you ready to go?' [Vicuna Urdaneta] again said he wanted to stay." Petition at 17; see also Doc. 1-5 at 9.

The Federal Respondents confirm that ICE intends to remove Vicuna Urdaneta to an alternate country but has not yet determined the intended location. Response at 2. To that end, they attach to the Response a document titled "Notice of Removal" and dated September 2, 2026. Doc. 6-4 at 1. It states: "This letter is to inform you that U.S. Immigration and Customs Enforcement (ICE) intends to remove you to [blank space]." "Unknown" is handwritten in the blank space, and a certificate of service shows that the contents of the document were read to Vicuna Urdaneta, but he refused to sign it. Id.

## III. Analysis

### A. Zadvydas Claim and Due Process Claims

In Zadvydas, 533 U.S. at 690, the Supreme Court held that indefinite detention of aliens raises serious constitutional concerns. Once an order of removal is final, ICE should make every effort to remove the alien within a reasonable time. Id. at 701. Further, the Court concluded that six months is a

presumptively reasonable period to detain a removable alien awaiting deportation. Id. "Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day removal period plus 90 days thereafter." Akinwale v. Ashcroft, 287 F.3d 1050, 1052 (11th Cir. 2002).

After that six-month period has passed and the alien "'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,'" the burden then shifts to the Government to provide evidence sufficient to rebut that showing. Id. (quoting Zadvydas, 533 U.S. at 701). Thus, "in order to state a claim under Zadvydas the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Akinwale, 287 F.3d at 1052.

In this case, the Court finds that the presumptively reasonable six-month period has not expired. Courts have used various methods to calculate the six-month period. Some courts have considered in the aggregate all periods of detention following an order of removal, regardless of whether the periods of detention were consecutive. See Jaranow v. Bondi, 819 F. Supp. 3d 1229, 1236 (W.D. Wash. 2026) (collecting cases from the Ninth Circuit that "have found that the six-month period of detention need not be consecutive to reach the limit established in Zadvydas"); Patel v. Bondi, No. CV 25-16218 (KMW),

2025 WL 3294353, at *2 (D.N.J. Nov. 26, 2025) (finding that the court must "consider the entire period of [the p]etitioner's detention"—not just the current length of detention). Other courts have not—instead they have determined that each period of detention restarts the removal-period clock. See Barrios v. Ripa, No. 1:25-cv-22644, 2025 WL 2280485, at *8 (S.D. Fla. Aug. 8, 2025) (rejecting a petitioner's argument "that his detention should be counted in the aggregate based upon his prior detentions," because doing so would raise constitutional concerns to "any subsequent period of detention, even one day," "[a]nd adjudicating the constitutionality of every re-detention would obstruct an area that is in the discretion of the Attorney General—effectuating removals"); Liu v. Carter, No. 25-3036-JWL, 2025 WL 1207089, at *2 (D. Kan. Apr. 25, 2025) ("[T]he removal-period clock restarts when an alien subject to a removal order is again detained by ICE."). Still other courts appear to have determined that the presumptively reasonable six-month period includes the 90-day statutory removal period and the 90-days immediately thereafter and expires once that time has run. See Beltran v. Ripa, No. 2:25-cv-01174-SPC-NPM, 2026 WL 21252, at *2 (M.D. Fla. Jan. 5, 2026).

Vicuna Urdaneta appears to advocate for the last approach; however, the Court is not persuaded. Instead, the Court determines that once an individual has been detained for more than six consecutive months after his final order of removal is entered, he has met the first prong of the Zadvydas test. Here,

because Vicuna Urdaneta had not been detained for six consecutive months before he filed this case, his claim under Zadvydas is not yet ripe. Therefore, the Court will dismiss this claim.

To the extent Vicuna Urdaneta raises a freestanding procedural or substantive due process claim concerning his post-removal order of detention, the Court notes that when the Supreme Court confronted the constitutional contours of indefinite immigration detention in Zadvydas, it provided "a standard through which to judge indefinite-detention cases—the Zadvydas standard." Martinez v. Larose, 968 F.3d 555, 566 (6th Cir. 2020). "In other words, the Zadvydas standard is due process: a § 1231 detainee who fails the Zadvydas test fails to prove a due process violation." Castaneda v. Perry, 95 F.4th 750, 760 (4th Cir. 2024). Thus, any independent due process claim fails.

**B. Third Country Removal Claims**

Next, Vicuna Urdaneta asserts that he is entitled to notice and a meaningful opportunity to present any fear-based claims before ICE removes him to a third country. See Petition at 29–32. He raises these claims pursuant to the Administrative Procedure Act and the Fifth Amendment. See id. As relief, Vicuna Urdaneta asks the Court to:

> Declare that the existing withholding order does not itself permit disregard of the notice and protection procedures applicable to removal to a different country; [and]

> Set aside any reviewable application to [Vicuna Urdaneta] of unlawful third-country-removal procedures and enjoin his third-country removal unless and until effective notice and a meaningful opportunity to invoke applicable protection have been provided

Id. at 33 (enumeration omitted).

The Court turns first to the question of jurisdiction over these claims. Section 1252(g) states in pertinent part that "no court shall have jurisdiction to hear any cause or claim by . . . any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). "It is a 'discretion-protecting provision' designed to prevent the 'deconstruction, fragmentation, and hence prolongation of removal proceedings.'" Camarena v. Dir., Immigr. & Customs Enf't, 988 F.3d 1268, 1272 (11th Cir. 2021) (quoting Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 487 (1999)). Nevertheless, the provision "does not cover 'the universe of deportation claims.'" Id. (quoting Reno, 525 U.S. at 482). Indeed, the Supreme Court has explained that section 1252(g) should be narrowly read to encompass only the "three discrete actions that the Attorney General may take: her decision or action to commence proceedings, adjudicate cases, or execute removal orders." Reno, 525 U.S. at 482 (internal quotation marks and citation omitted). While "'many other decisions or actions' may be 'part of the deportation process,' only

claims that arise from one of the covered actions are excluded from [court] review" by this section. Camarena, 988 F.3d at 1272.

In the context of third-country removals, many district courts have determined that a federal court has jurisdiction over the types of claims that Vicuna Urdaneta raises in this case. See Guerra v. Blanche, No. 2:26-CV-00498-GMN-MDC, 2026 WL 949027, at *3 n.6 (D. Nev. Apr. 7, 2026) (collecting cases); but see Gakou v. Warden of Prairieland Det. Ctr., --- F.4th ---, 2026 WL 3044209, at *1 (5th Cir. Oct. 10, 2026); Tran v. Warden, No. 2:25-CV-1224-KCD-NPM, 2026 WL 672969, at *10 (M.D. Fla. Mar. 10, 2026). Most notably, the First Circuit Court of Appeals has determined that, for a similar claim brought in a civil rights class action case, § 1252(g) did not defeat jurisdiction because the plaintiffs did not challenge the Department of Homeland Security's (DHS) decision to proceed with removal or its authority to remove plaintiffs to third countries. D.V.D. v. U.S. Dep't of Homeland Sec., --- F.4th ---, 2026 WL 2797801, at *9 (1st Cir. Sept. 18, 2026). The First Circuit determined that the plaintiffs instead challenged "the lawfulness of DHS conducting third-country removals without first providing class members with effective notice and a meaningful opportunity to raise any fear-based claims they might have about removal to a particular third country," and it ultimately affirmed in part the district court's ruling that due process requires notice of

the country to which a person is to be removed and an opportunity to challenge removal to that country.[2] Id.

Here, the Eleventh Circuit instructs that "[w]hen 'asking if a claim is barred by § 1252(g), courts must focus on the action being challenged.'" Camarena, 988 F.3d at 1272. Considering both the claims and relief requested in the Petition, the Court finds it does not have jurisdiction pursuant to § 1252(g). Although Vicuna Urdaneta frames his challenge as one to "the legal sufficiency of the procedures that would permit removal to a newly selected destination," Petition at 8, the Court is not persuaded by this linguistic sleight of hand. At its most basic, Vicuna Urdaneta's challenge is to the execution of his removal order. Indeed, the relief he requests supports this determination. Vicuna Urdaneta not only asks this Court to essentially interpret his removal order, but also to enjoin his removal until DHS complies with certain requirements. But, it is widely accepted that district courts do not have jurisdiction to review orders of removal. See 8 U.S.C. § 1252(a)(5) (providing that petitions for review filed with an appropriate court of appeals is the sole means for judicial review of an order of removal). And, a request for a stay of removal is a challenge to a removal order within the ambit of

[2] Recently, the Supreme Court issued an order staying the district court's ruling. See Dep't of Homeland Sec. v. D.V.D., --- S. Ct. ---, 2026 WL 2917860, at *1 (Sept. 29, 2026). The Court also granted certiorari to consider, among other issues, whether the district court had jurisdiction over the plaintiffs' claims. See id.

§ 1252(g). See, e.g., Morales v. Noem, No. 25-62598-CIV, 2026 WL 444955, at *2 (S.D. Fla. Feb. 17, 2026) ("[T]his Court would be powerless to enjoin a decision or action to execute an existing removal order.") As such, the claims are due to be dismissed.

Accordingly, it is **ORDERED**:

1. The Petition (Doc. 1) is **DISMISSED without prejudice**.

2. Vicuna Urdaneta's Emergency Motion for Temporary Restraining Order (Doc. 3) is **DENIED as moot**.

3. The **Clerk of Court** shall enter judgment dismissing the Petition, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 10th day of November, 2026.

Marcia Morales Howard

**MARCIA MORALES HOWARD**
United States District Judge

Jax-9 10/29
c:
Counsel of Record